IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES SIMS, et al. | : | CIVIL ACTION |
| v. | : | |
| VIACOM, INC., et al. | : | NO. 09-3521 |

MEMORANDUM

Bartle, C.J.                                                                          November 17, 2010

On January 23, 2009, plaintiffs Charles "Bronson" Sims and Allison Jordan, currently pro se, filed a lawsuit against defendants Viacom, VH1, 51 Minds Entertainment, LLC, Cris Abrego, and Chris Abrego Productions LLC in the Court of Common Pleas of Philadelphia County. It arises out of a dispute regarding a purported contract between the parties for the purchase of plaintiffs' idea for a reality television show.

Defendants filed a timely Notice of Removal to this court based on diversity of citizenship. Thereafter, plaintiffs filed a verified amended complaint. On November 17, 2009, we dismissed all claims against defendant VH1 because it is a cable channel owned by defendant Viacom and is not a separate legal entity. We also dismissed plaintiffs' claims for fraud and theft by conversion against defendant Viacom for failure to state a claim. On April 27, 2010, all claims against defendants 51 Minds Entertainment, LLC, Cris Abrego, and Chris Abrego Productions, LLC were dismissed for lack of personal jurisdiction.

Now before the court is the motion of defendant Viacom, Inc. ("Viacom") for summary judgment on remaining claims of breach of contract, breach of an implied contract, and negligent misrepresentation.

I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable jury to find for the plaintiffs. Id. at 252. At this stage, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

The following facts are either undisputed or viewed in the light most favorable to plaintiffs.[1]

---

1. Plaintiff Jordan did not file any opposition to the defendant's motion for summary judgment. Plaintiff Sims filed a one page "Answers to the Motion of Summary Judgment," found at Docket No. 39. However, plaintiffs each signed a verification of the truth of their amended complaint, "subject to the penalties
(continued...)

In January 2004, plaintiff Charles Sims developed a concept for a reality television show called "Ghetto Fabulous," which would feature a competition between uncouth urban women. He officially registered and recorded written documentation of this concept with the Writer's Guild of America on February 9, 2004. On March 19, 2004, Sims met with plaintiff Allison Jordan to further develop his concept into a formal proposal or "treatment" describing their idea for a reality television show. Following this meeting, on April 8, 2004, Sims and Jordan amended his Writer's Guild registration to add Jordan as a co-writer and attached the formal treatment.

As described in the treatment, "Ghetto Fabulous" was a thirty-minute program featuring a contest between uncouth urban women who would win prizes and challenges by becoming socially polished. Some of the features listed in the treatment included "rowdy girls" housed in a mansion, a panel of three judges along with guest celebrities, a host who was heard over an intercom, lessons in dining etiquette, chauffeurs, and a shopping spree for the contestants.

Acting on behalf of herself and Sims, Jordan attempted to interest various media companies in the treatment. Using the name "Wendy Epstein" of Rock Candy Productions, a persona that

---

1.(...continued)
of 18 C.S.A. Section 4904 relating to unsworn falsification to authorities." We will treat the verified amended complaint as an affidavit for the purposes of this motion for summary judgment. See Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985).

she created for use in the entertainment industry, Jordan contacted a Viacom employee named Stacey Jenkins regarding the treatment. On September 3, 2004, Jenkins sent Jordan a submission release, which Jordan signed on behalf of herself and Sims. Jordan forwarded the treatment to Jenkins after she returned the signed submission release.

Following the submission of the Ghetto Fabulous treatment, Jenkins engaged in a series of discussions with a woman she believed to be Wendy Epstein regarding Viacom's purchase of the show. These discussions occurred over a period of two years, during which Jenkins purportedly expressed interest in the concept. It is not ascertainable from the record whether Jenkins spoke with Jordan directly or whether Jenkins spoke with Jordan's business partner Corliss King. Viacom never purchased the "Ghetto Fabulous" concept from plaintiffs or made any offer to purchase or produce their show.

In April 2007, the reality television program "Charm School" debuted on VH1. "Charm School" is a reality program where uncouth women compete for prizes by acquiring social graces. It shares numerous features with plaintiffs' treatment of "Ghetto Fabulous," including crass female contestants from impoverished urban backgrounds, housing for contestants in a mansion, a celebrity host heard only over an intercom, a panel of judges, shopping sprees, and instruction in etiquette. On May 21, 2007, Sims drafted a list of "Show Comparisons," noting

the similarities between his treatment for "Ghetto Fabulous," and the activities depicted on several episodes of "Charm School."

### III.

Viacom maintains that plaintiffs' claim for breach of contract (count 1) must fail because plaintiffs have not produced any contract between the parties or otherwise provided any proof of the "essential terms" of any contract and have not come forward with evidence of any purported breach.

In the amended complaint, plaintiffs allege that the signed submission release contained "various rights and financial benefits" for them should Viacom produce a television show based on the "treatment" that they submitted. Significantly, plaintiffs have failed to produce a copy of the submission release on which they rely. Nor have they set forth in their amended complaint the specific terms they allege the contract contained.

Viacom likewise has been unable to locate a signed copy of the submission release. However, it has produced a copy of its standard submission release form for MTV Networks ("MTVN"), a division of Viacom. Viacom has also submitted the affidavit of Stacey Jenkins.

The standard submission release form produced by defendant Viacom provides:

> [y]ou acknowledge that there does not now exist, nor has there ever existed, nor will there exist, a fiduciary relationship between you and MTVN. You requested this opportunity to submit your Material to MTVN and you make

> this submission voluntarily and on an
> unsolicited basis. You and MTVN had not yet
> reached an agreement concerning the use of
> the Material and you realize that no
> obligation of any kind is assumed by, or may
> be implied against, MTVN unless and until a
> formal written contract has been entered into
> between you and MTVN, and then the obligation
> shall be only as is expressed in the formal
> written contract.

The release states that any controversy regarding MTVN's use of the submitted material shall be governed by the law of New York. Furthermore, it contains a six month limitation period for bringing certain claims. The time limitation clause reads:

> In the event of such [any controversy arising
> out of or in connection with this agreement,
> including without limitation any claim that
> MTVN has used any legally protectable portion
> or your Material in violation of the terms
> hereof] you agree that you shall assert such
> claims not later than <u>six (6) moths after the
> date on which you first learned (or
> reasonably should have been aware)</u> of MTVN's
> use or intended use of any portion of the
> Material (emphasis added).

In exchange for plaintiffs' agreement to the conditions of the submission release form, Viacom "agrees to cause its appropriate employee having the duty of evaluating material of the type now being submitted by you to review your Material."

In her affidavit, Jenkins states that, pursuant to its standard policy, Viacom does not consider or review any unsolicited materials unless the person wishing to submit the material has executed a written submission release. She also avers that she sent a submission release form to plaintiffs and that the form was returned signed by Allison Jordan. To the best

of her knowledge and belief, the submission release returned by plaintiffs was the standard form used by Viacom.

Plaintiffs have not come forward with evidence of any submission release which differs from that brought forward by Viacom. Accordingly, the submission release as identified by Viacom is the undisputed contract in issue.

The standard submission release states that any controversy related to the use of the material submitted is governed by New York law. To prove a claim for breach of contract under New York law, a plaintiff must establish (1) a contract; (2) performance of the contract by one party; (3) breach of the contract by the other; and (4) damages. See Universal Marine Med. Supply, Inc. v. Lovecchio, 8 F. Supp. 2d 214, 221 (E.D.N.Y. 1998).

Even if Viacom had breached the terms of the submission release by using "Ghetto Fabulous," Jordan's claim is time-barred by the contractual provision requiring her to assert her claims within six months of her actual or constructive discovery of the alleged use. While the statute of limitations for breach of contract in New York is six years, parties may agree, as here, to a shorter statute of limitations. See N.Y. C.P.L.R. §§ 201, 213 (Consol. 2010). It is undisputed that "Ghetto Fabulous" aired in April 2007. Plaintiffs have produced, as an exhibit to their amended complaint a document entitled, "Show Comparisons," which was drafted by Sims and identified purported similarities between "Charm School" and "Ghetto Fabulous." It was dated May 21, 2007.

Plaintiffs clearly knew or reasonably should have known of any contractual breach by May 21, 2007. However, they did not file suit until January 23, 2009, well over a year after the window for asserting claims had closed. Even if Jordan had come forward with evidence of a contractual breach by Viacom, such a claim would be barred by the time limitation set forth in the submission release. We will enter judgment in favor of defendant Viacom on plaintiffs' claim for breach of contract (count 1).

Viacom also contends that plaintiffs' claim for breach of an implied contract (count 2) fails because it is precluded by the existence of the submission release form and because plaintiffs have failed to come forward with any record evidence to support it. From the record before us, either the law of Pennsylvania or that of New York applies. Under Pennsylvania law, the existence of a written contract precludes a plaintiff from recovering on a claim for implied contract or common law obligation for the same subject matter. See Eazor Exp. v. Barkley, 272 A.2d 893, 895 (Pa. 1971). The Court of Appeals of New York has similarly held that "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery" under an implied contract theory. Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987); see also Julien J. Studley, Inc. v. N.Y. News, Inc., 512 N.E.2d 300, 301 (N.Y. 1987). We have already determined that the submission release is a valid written contract governing the relationship between plaintiffs and Viacom

for use of the "Ghetto Fabulous" treatment. The submission release supersedes any alleged implied contract. We will enter judgment in favor of defendant Viacom on plaintiffs' claim for breach of an implied contract (count 2).

Finally, Viacom argues that plaintiffs' claim for negligent misrepresentation also fails. As with the claim of breach of an implied contract, the record is unclear whether Pennsylvania or New York law governs. Under Pennsylvania law, the tort of negligent misrepresentation consists of four elements: (1) The defendant made a misrepresentation of material fact, (2) with knowledge of its falsity, (3) with the intent to induce the plaintiff to act on it, and (4) injury must result to the plaintiff, acting in justifiable reliance on the misrepresentation. See Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999). Under New York law, negligent misrepresentation has three elements: (1) The existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585 (N.Y. 2007).

We need not decide which state's law is applicable to plaintiffs' claim for negligent misrepresentation because plaintiffs have failed to come forward with any evidence to support their claim under either standard. Plaintiffs have not identified a single misrepresentation made by Jenkins or any

other Viacom agent.  Nor have they come forward with evidence of a single instance of Jenkins or Viacom providing them with incorrect information.  Accordingly, we will enter judgment for defendant Viacom on plaintiffs' claim for negligent misrepresentation (count 4).